Kevin Gale THOMPSON, Plaintiff,

v.

**CORT FURNITURE RENTAL CORP., Defendant.**

**No. 92–2163–TUA.**

United States District Court,
W.D. Tennessee, W.D.

June 15, 1992.

John S. Lawson, Memphis, Tenn., for plaintiff.

William A. Blue, Nashville, Tenn., for defendant.

## ORDER GRANTING MOTION
## TO REMAND

TURNER, District Judge.

Plaintiff Kevin Gale Thompson ("Thompson"), a citizen of Tennessee, filed this wrongful discharge action in the Circuit Court of Tennessee against Cort Furniture Rental Corp. ("Cort"), a New York corporation with its principal place of business in Virginia. Presently before the court is plaintiff's Motion to Remand. Plaintiff contends that under 28 U.S.C. § 1445(c) this action was improvidently removed by defendant inasmuch as it arises under Tennessee's worker's compensation laws. On the other hand, defendant argues that plaintiff's action arises under Tennessee tort rather than worke·'s compensation law thus making section 1445(c) inapplicable.

### I. Background Facts.

According to his complaint, Thompson suffered three separate injuries to his back from September 1989 to November 1990, while lifting furniture in the course of his duties with Cort. Thompson fully recovered from each injury and promptly returned to work each time. On January 16, 1991, two days after returning to work following his recovery from the third injury, Thompson was told he was being discharged because he was "accident prone." Thompson alleges that Cort held an employees' meeting on January 17, 1991, where the employees were told that Thompson had been "discharged because he was 'trying to get money from the company' and was a 'threat to the company'." *Plaintiff's Complaint* at 2.

Plaintiff filed this action in the Circuit Court of Shelby County, Tennessee alleg-ing that he had been discharged in violation of *Tenn.Code Ann.* § 50–6–114 in retaliation for filing worker's compensation claims. Following service of process, Cort filed a notice of removal based upon diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.

Plaintiff subsequently filed this motion to remand arguing that 28 U.S.C. § 1445(c) proscribes the removal of any action "arising under the workmen's compensation laws" of the State. Plaintiff argues that inasmuch as he was allegedly discharged in retaliation for filing claims for worker's compensation benefits, such suit "arises" under the worker's compensation laws and should therefore be remanded. The court agrees.

### II. Remand under Section 1445(c).

■ It is axiomatic that federal law governs the construction of removal statutes. *See Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 705, 92 S.Ct. 1344, 1349, 31 L.Ed.2d 612 (1972). The removal statute at issue, 28 U.S.C. § 1445(c), provides an exclusion to the general rule that diversity suits may be removed to federal court. Section 1445(c) reads:

> A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States.

On its face, the statute appears to contain a fairly explicit prohibition of removal. There are, however, two ambiguities in the language used. These ambiguities revolve around: first, the intended meaning of the phrase "arising under"; and, second, what is encompassed in the term "laws" as used in this statute.

■ Subsection (c) was added to section 1445 by amendment in 1958. *See* Pub.L. No. 85–554, § 5, 72 Stat. 415, July 25, 1958, *reprinted in* 1958 U.S.C.C.A.N. 487, 488. The legislative history of that amendment includes a Senate Report discussing the rationale behind the provision. *See* S.Rep. No. 1830, 85th Cong., 2d Sess. (1958), *reprinted in* 1958 U.S.C.C.A.N. 3099, 3103–06. Without a doubt, Congress's primary reason for adopting the amendment was its concern that the removal of worker's com-

pensation cases where there was complete diversity of parties was congesting the federal courts. This, congestion and concomitant slow-down in the dispute resolution process, in turn defeated one of the purposes for which such laws were developed, namely to provide for the expeditious and inexpensive settlement of claims for worker's injuries. *Id.* at 3106.

The legislative history for section 1445(c) thus reflects a congressional desire to narrow the scope of diversity cases subject to removal from state to federal district courts, while providing for prompt resolution of disputes.

Turning to the specific language embodied in section 1445(c), it seems clear that where a cause of action is specifically enumerated in a statute, it "arises under" that statute. *See, e.g., Kilpatrick v. Martin K. Eby Construction Co., Inc.,* 708 F.Supp. 1241 (N.D.Ala.1989). Where, as here, however, the statute does not *explicitly* provide for the cause of action, but the court finds such action to be *necessarily implied* in order to give effect to the statute, does such judicially recognized action also "arise under" the Act? The greater weight of authority is in the affirmative.

Although the language in section 1445(c) has not been specifically construed by the Sixth Circuit, there is ample authority from the United States Supreme Court construing nearly identical language in other jurisdictional statutes and from several lower courts construing such language under section 1445(c). Most notably, the phrase "arising under" has been construed under 28 U.S.C. § 1331.[1] However, the phrase also appears in several other sections of Title 28, conveying on the federal courts particular grants of jurisdiction.[2] The meaning given to the phrase in each statutory provision appears to be the same. *See generally* 13B C. Wright, A. Miller & E.

Cooper, *Federal Practice & Procedure* § 3562, at 17–48 (1984 & Supp.1992).

In the seminal case *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), Justice Cardozo, when construing whether a controversy before the Court "arose" under federal law, stated:

> To bring a case within the [meaning of section 1331], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action....

*Id.* at 112, 57 S.Ct. at 97.

The Court noted the need for pragmatism in making such determination stating:

> To define broadly and in the abstract "a case arising under the Constitution or laws of the United States" has hazards of a kindred order. What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation.... To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible.

*Id.* at 117–18, 57 S.Ct. at 100. This principle of pragmatism has been repeatedly applied by the Court when construing such language in subsequent controversies and other statutes.

In *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1092 (5th Cir.1991), the Fifth Circuit stated: "We do not see any reason not to define "arising under" in section 1445(c) as we have defined it in section 1331." The court "read section 1445(c) broadly to further" Congress's intent that "all cases under a state's workers' compensation *scheme* remain in state court." *Id.* The *Jones* court held that notwithstanding the statutory embodiment of the civil cause

---

**1.** 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States." (emphasis added).

**2.** *E.g.,* 28 U.S.C. §§ 1337 (antitrust); 1338 (patents, copyrights, trademarks, etc.); 1339 (postal matters); 1340 (Internal Revenue; and 1441(b) (actions removable)).

of action in a separate provision,[3] "such suit ar[ose] under the workers' compensation laws of Texas within the meaning of section 1445(c)." *Id.* The court concluded, "were it not for the workers' compensation laws, article 8307c would not exist." Thus, a separate civil action brought pursuant to section 8307c "arises under the workers' compensation laws of Texas." *Id. See Thomas v. Kroger Co.,* 583 F.Supp. 1031 (S.D.W.Va.1984) (reaching a similar result).

Congress's use of the word "laws" in section 1445(c) rather than "Acts" or "statutes" seems to indicate it envisaged a broader application of the term's use. As noted above, section 1331 uses similar language and provides that the district courts shall have original jurisdiction in actions *"arising under the* Constitution, *laws,* or treaties" of the United States. (emphasis added). The Supreme Court when construing this language in *National Farmers Union Insurance Co. v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) stated:

> It is well settled that this statutory grant of "jurisdiction will support claims founded upon federal common law as well as those of a statutory origin." Federal common law as articulated in rules that are fashioned by *court decisions are "laws"* as that term is used in § 1331.

*Id.* at 850, 105 S.Ct. at 2450–51 (footnotes citing numerous cases omitted) (emphasis added). *See also Illinois v. City of Milwaukee,* 406 U.S. 91, 99–100, 92 S.Ct. 1385, 1390–91, 31 L.Ed.2d 712 (1972).

Section 1445(c) is similar in construction. It reads: *"arising under the* workmen's compensation *laws* of such State." (emphasis added). Given the Supreme Court's construction of the statutory use of the word "laws" in section 1331 as encompassing the common law articulated in court decisions as well as statutory enactments, this court believes Congress did not intend to constrict the phrase "workmen's compensation laws" to statutory enactments alone. Rather, the court believes the phrase encompasses both statutory enactments and the common law.

### III. Tennessee Worker's Compensation Law.

Having decided that section 1445(c)'s exclusion embraces both statutory enactments and the common law and that such judicial precedent "arises under" the "laws" referred to, the court turns to the law and facts of the instant case. The Tennessee Worker's Compensation Act was enacted in 1919. 1919 *Tenn.Pub.Acts,* ch. 123. Section 16 of such Act, codified at *Tenn.Code Ann.* § 50–6–114 (1991), provides:

> No contract or agreement, written or implied, or rule, regulation *or other device,* shall in any manner operate to relieve any employer in whole or in part of any obligation created by this chapter except as herein provided.

(Emphasis added).

In *Clanton v. Cain–Sloan Co.,* the Tennessee Supreme Court carved out an exception to the long-standing Tennessee law that an employee-at-will "can be discharged without breach of contract for good cause, bad cause, or no cause at all." 677 S.W.2d 441, 443 (Tenn.1984) (citing *Payne v. Railroad Co.,* 81 Tenn. 507 (1884)). The court stated that:

> [T]he Worker's Compensation Law is a comprehensive scheme enacted to provide a certain and expeditious remedy for injured employees. It reflects a careful balancing of the interests of employer and employee.... "The Act creates a *duty* on the employer to compensate employees for work-related injuries ... and a *right* on the employee to receive such compensation." *Frampton v. Central Indiana Gas. Co.,* 297 N.E.2d 425, 427 (Ind.1973)[4] (emphasis supplied).

---

**3.** Article 8307c authorized an employee who had been discharged in retaliation for filing a worker's compensation claim to file a civil action for damages in a district court of the State of Texas. The notice of injury and a claim for benefits was to be filed with the Texas Workers' Compensation Commission pursuant to article 8308–

5.01. Thus, the statute authorized a procedure different than that normally employed for obtaining workers' compensation benefits.

**4.** The rationale used by the Indiana Supreme Court in the *Frampton* decision has been subsequently adopted in numerous jurisdictions.

Retaliatory discharges completely circumvent this legislative scheme. Such discharges will have the effect of relieving the employer of its duty to compensate and the employee of his or her right to compensation. In this regard, we agree with *Frampton* that *a retaliatory discharge constitutes a device under § 50–6–114.* This section like the rest of the Act is to be given a liberal and equitable construction "to the end that the chapter may be realized and attained." [*Tenn.Code Ann.*] § 50–6–116. (emphasis added).

In our opinion, a cause of action for retaliatory discharge, although not explicitly created by the statute, is necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intention of the legislature. A statute need not expressly state what is necessarily implied in order to render it effectual. *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730, 732 (Ky.1984); *Cf. State ex rel. Branch & Co. v. Sinking Fund Comm'r's*, 1 Tenn. Cas. (Shannon) 490, 502 (Tenn.1875).

*Clanton*, 677 S.W.2d at 444–45 (footnote added).

The Tennessee Supreme Court thus held that the General Assembly's passage of the Worker's Compensation Law and the general prohibition in section 50–6–114 against any "other device" that would defeat the purpose of the Act necessarily created an action for retaliatory discharge. In other words, prior to the Worker's Compensation Act, employees at will were terminable at will. However, after the Act, employees at will could not be terminated for filing a worker's compensation claim. But for the Act, the law relative to termination of at-will employees would have remained as it had for decades.

Subsequent to *Clanton*, the Tennessee Supreme Court may have muddied the water a bit with its analysis of why a retaliatory discharge claim could not use the same appellate procedure as a normal claim for disability benefits under worker's compensation. In *Van Cleave v. McKee Baking Co.*, 712 S.W.2d 94 (Tenn.1986), the court held that a claim for retaliatory discharge was a "separate and independent" tort rather than a worker's compensation claim. The court's analysis concerned the question of whether the appeal of an action for retaliatory discharge should be directly to the Tennessee Supreme Court as provided for under *Tenn.Code Ann.* § 50–6–225(e) or to the Tennessee Court of Appeals. The *Van Cleave* court held such a claim to be a "separate tort action" and thus appealable to the Court of Appeals.

Only one previous federal case has discussed whether a suit for retaliatory discharge "arises under" the Tennessee worker's compensation laws for purposes of removal jurisdiction. In *Smith v. Union Carbide Corp.*, 664 F.Supp. 290 (E.D.Tenn. 1987), the plaintiff filed a state law wrongful discharge action alleging she had been terminated because she had persisted in pursuing a worker's compensation claim. The employer filed a notice of removal based upon *both* federal question and diversity jurisdiction as well as a motion for summary judgment arguing plaintiff's claim was preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Plaintiff moved to remand the action pursuant to 28 U.S.C. § 1445(c) arguing that her wrongful discharge claim had arisen under the Tennessee Worker's Compensation law.

The court denied the plaintiff's motion to remand holding that "a retaliatory discharge claim is an independent tort action judicially created. Therefore, it does not arise under the worker's compensation statute of the State of Tennessee and its removal is not barred by 28 U.S.C. § 1445(c)." *Id.* at 292 (citing *Van Cleave v. McKee Baking Co.*, 712 S.W.2d 94, 95 (Tenn.1986) and *Waycaster v. AT & T Tech-*

See, e.g., *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978); *Murphy v. City of Topeka*, 6 Kan.App.2d 488, 630 P.2d 186 (1981); *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730 (Ky.1984); *Sventko v. Kroger*

*Co.*, 69 Mich.App. 644, 245 N.W.2d 151 (1976); *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984). *See also* 2A A. Larson, *The Law of Workmen's Compensation* § 68.36(a), at 13–167 to –171, n. 51.1 (1990 & Supp.1991).

*nologies, Inc.,* 636 F.Supp. 1052 (N.D.Ill. 1986)).

However, that portion of the opinion finding that a remand under section 1445(c) was not merited was dicta inasmuch as the court went on to hold: "Moreover, as indicated below, plaintiff's wrongful discharge [claim] is preempted by federal labor law. *As such it arises not under state law but federal law." Id.* (emphasis added). Because the plaintiff in *Smith* was protected by a collective bargaining agreement, Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempted his state law based claims.[5] Thus, the underlying reason for removal in *Smith* was that federal question jurisdiction existed.

Interestingly, both the *Smith* case and *Waycaster,* the Illinois federal district court case upon which the *Smith* court relied, involved retaliatory discharge claims where a collective bargaining agreement was in place. In each case, the court's analysis was virtually identical. Each court first found that the retaliatory discharge claim was created under the common law and thus did not fall under the Worker's Compensation Act; each court then held that notwithstanding such determination, the question was preempted by federal law under section 301 of the LRMA, 29 U.S.C. § 185.

The district courts in Illinois are not unanimous, however. In *Alexander v. Westinghouse Hittman Nuclear Inc.,* 612 F.Supp. 1118 (N.D.Ill.1985), District Judge Shadur also analyzed whether a retaliatory discharge claim arose under the Workers' Compensation Act and reached the opposite result. There, as in the case *sub judice,* there was no question of preemption under federal law.

### IV. Conclusion.

In the present controversy, the plaintiff was not protected by a collective bargaining agreement. He was an at-will employee subject to discharge for "good cause, bad cause, or no cause at all" *except* that he could not be discharged for filing a worker's compensation benefits claim. Thus, there is no federal question present upon which removal can be based. In *Clanton v. Cain–Sloan,* the Tennessee Supreme Court held that the General Assembly's passage of the Worker's Compensation Law necessarily altered long-standing Tennessee law and provided a wrongfully terminated at-will employee with a claim for retaliatory discharge. Such action for retaliatory discharge was created by and is dependent upon the Tennessee Worker's Compensation Act. Both the Act and the common law construing the Act comprise the Tennessee worker's compensation laws *as they pertain to the language in section 1445(c).*

The Tennessee Supreme Court's subsequent decision in *Van Cleave* has no effect on this court's construction of federal removal statutes because we do not here contemplate the appellate jurisdiction of such an action within the State judicial system. Instead, the issue before this court is to what extent *Congress* intended to constrict worker's compensation suits being removed to the federal courts and whether this action should be construed as one subject to such prohibition.

The legislative history of section 1445(c), as well as the expansive reading the courts have given to similar language contained in 28 U.S.C. § 1331, persuade the court that Congress intended to encompass more than just explicit statutory enactments within its language. A worker's compensation tort action that is necessarily created by statutory implication falls within that body of law for purposes of removal jurisdiction. Justice Holmes's oft quoted statement that "a suit arises under the law that creates the cause of action"[6] is an appropriate synopsis of the rule in this case.

---

**5.** Subsequently, the Supreme Court clarified the procedure for determining whether state law claims have been preempted by section 301 of the LRMA. *See Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 408–10, 108 S.Ct. 1877, 1882–83, 100 L.Ed.2d 410 (1988).

**6.** *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916).

The court holds that plaintiff's cause of action for retaliatory discharge "arises under" the Tennessee worker's compensation laws as that language is used in 28 U.S.C. § 1445(c). Plaintiff's motion to remand pursuant to 28 U.S.C. § 1445(c) is granted. This action is therefore remanded.

IT IS SO ORDERED this 12th day of June, 1992.